**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF FLORIDA**

**CASE NO. 25-CR-20443-MOORE**

**UNITED STATES OF AMERICA**

**v.**

**KEVIN TYLER MARTIN,**

      **Defendant.**

**UNITED STATES' UNOPPOSED MOTION FOR**
**PRELIMINARY ORDER OF FORFEITURE**

Pursuant to 18 U.S.C. § 981(a)(1)(C), and the procedures set forth in 21 U.S.C. § 853 and Rule 32.2 of the Federal Rules of Criminal Procedure, the United States moves for the entry of a Preliminary Order of Forfeiture against Defendant **KEVIN TYLER MARTIN** (the "Defendant") in the above-captioned matter. The United States seeks a forfeiture money judgment in the amount of $324,123.26 in United States currency. In support of this motion, the United States provides the following factual and legal bases.

**I.    FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

On or about October 2, 2025, a federal grand jury returned an Indictment charging the Defendant in Count 1 with conspiracy to interfere with interstate commerce by extortion in violation of 18 U.S.C. § 1951(a), in Count 2 with interference with interstate commerce by extortion in violation of 18 U.S.C. § 1951(a), and in Count 3 with intentional damage to a protected computer in violation of 18 U.S.C. § 1030(a)(5)(A). *See* Indictment, Dkt. No. 17. The Indictment also contained forfeiture allegations, which alleged that upon conviction of a violation of 18 U.S.C. § 1951(a), the Defendant shall forfeit to the United States any property, real or personal, which

constitutes or is derived from proceeds traceable to the violation to such offense, pursuant to 18 U.S.C § 981(a)(1)(C). *See id.* at 7–8.

On December 18, 2025, the Court accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Minute Entry, Dkt. No. 61; Plea Agreement ¶ 1, Dkt. No. 62. On December 29, 2025, the Court adopted U.S. Magistrate Judge Ellen F. D'Angelo's Report and Recommendation and accepted the Defendant's guilty plea to Count 1 of the Indictment. *See* Paperless Order, Dkt. No. 69; Report and Recommendation, Dkt. No. 65. As part of the guilty plea, the Defendant agreed to a forfeiture money judgment in the amount of $324,123.26. *See* Plea Agreement ¶ 15.  In support of the guilty plea, the Defendant executed a Factual Proffer, and the Court found that there was a factual basis to support the Defendant's conviction. *See* Factual Proffer, Dkt. No. 63; *see generally* Report and Recommendation, Dkt. No. 65; Paperless Order, Dkt. No. 69. The Factual Proffer also provided a basis for the forfeiture of property. *See id.* at 3–4.

## II.   MEMORANDUM OF LAW

### A.  Directly Forfeitable Property

Any property, real or personal, that constitutes or is derived from proceeds traceable to the violation, or conspiracy to commit a violation, of 18 U.S.C. § 1951, is subject to forfeiture to the United States. *See* 18 U.S.C. § 981(a)(1)(C); 18 U.S.C. § 1956(c)(7) (defining "specified unlawful activity," which includes offenses listed in 18 U.S.C. § 1961(1)); 18 U.S.C. § 1961(1).

If a defendant is convicted of such violation, the Court "shall order" the forfeiture of property as part of the sentence. *See*, 18 U.S.C. § 981(a)(1)(C); 28 U.S.C. § 2461(c). Criminal forfeiture is governed by the preponderance standard.  *See United States v. Hasson*, 333 F.3d 1264, 1277 (11th Cir. 2003). Upon finding that property is subject to forfeiture by a preponderance, the Court:

> . . . must promptly enter a preliminary order of forfeiture setting forth the amount of any money judgment, directing the forfeiture of specific property, and directing the forfeiture of any substitute property if the government has met the statutory criteria.  The court must enter the order without regard to any third party's interest in the property.  Determining whether a third party has such an interest must be deferred until any third party files a claim in an ancillary proceeding under Rule 32.2(c).

Fed. R. Crim. P. 32.2(b)(2)(A).

At sentencing, the Court "must include the forfeiture when orally announcing the sentence or must otherwise ensure that the defendant knows of the forfeiture at sentencing," and then "include the forfeiture order, directly or by reference, in the judgment." Fed. R. Crim. P. 32.2(b)(4)(B). Moreover, if "before sentencing, the court cannot identify all the specific property subject to forfeiture or calculate the total amount of the money judgment," the Court may enter a general order of forfeiture that: "(i) lists any identified property; (ii) describes other property in general terms; and (iii) states that the order will be amended under Rule 32.2(e)(1) when additional specific property is identified or the amount of the money judgment has been calculated." Fed. R. Crim. P. 32.2(b)(2)(C). Under Rule 32.2(e)(1), "the court may at any time enter an order of forfeiture or amend an existing order of forfeiture" when additional, specific property is identified, or to forfeit any substitute property under 21 U.S.C. § 853(p).

### B.  Forfeiture Money Judgments

A forfeiture order may be sought as a money judgment.  *See* Fed. R. Crim. P. 32.2(b)(1)(A), (2)(A); *see also United States v. Padron*, 527 F.3d 1156, 1162 (11th Cir. 2008) (holding that Federal Rules of Criminal Procedure "explicitly contemplate the entry of money judgments in criminal forfeiture cases"). The forfeiture money judgment is final as to the defendant "[a]t sentencing—or at any time before sentencing if the defendant consents." *See* Fed. R. Crim. P. 32.2(b)(4)(A). No ancillary proceeding is required when forfeiture consists solely of a money

3

judgment. *See* Fed. R. Crim. P. 32.2(c)(1). As additional property is identified to satisfy the forfeiture money judgment, the Court must order the forfeiture of such property. *See* Fed. R. Crim. P. 32.2(e)(1) ("[T]he court may at any time enter an order of forfeiture or amend an existing order of forfeiture to include property that . . . is subject to forfeiture under an existing order of forfeiture but was located and identified after that order was entered; or . . . is substitute property . . . ."); *see also* Fed. R. Crim. P. 32.2(b)(2)(C).

The amount of the money judgment should represent the full sum of directly forfeitable property, regardless of the defendant's ability to satisfy the judgment at the time of sentencing. *See United States v. McKay*, 506 F. Supp. 2d 1206, 1211 (S.D. Fla. 2007) (adopting the majority rule); *see also United States v. Blackman*, 746 F.3d 137, 143–44 (4th Cir. 2014) ("The fact that a defendant is indigent or otherwise lacks adequate assets to satisfy a judgment does not operate to frustrate entry of a forfeiture order."). The Court determines the amount of the money judgment "based on evidence already in the record, including any written plea agreement, and any additional evidence or information submitted by the parties and accepted by the court as relevant and reliable." Fed. R. Crim. P. 32.2(b)(1)(B). The defendant's money judgment amount can be based on a reasonable estimate on the amount of property subject to forfeiture. *See, e.g., United States v. Roberts*, 660 F.3d 149, 166 (2d Cir. 2011); *United States v. Peithman*, 917 F.3d 635, 651 (8th Cir. 2019); *United States v. Vico*, 2016 WL 233407, at *7 (S.D. Fla. Jan. 20, 2016) (calculation of money judgment does not require mathematical exactitude; district court may make a reasonable extrapolation supported by a preponderance of the evidence).

A defendant's forfeiture money judgment should reflect the property obtained as a result of the offense of conviction. *See* 21 U.S.C. § 853; *accord United States v. Honeycutt*, 581 U.S. 443, 450 (2017) (However, the "mastermind might receive payments directly from drug

purchasers, or he might arrange to have drug purchasers pay an intermediary such as the college student. In all instances, he ultimately 'obtains' the property—whether 'directly or indirectly.'") (holding that section 853 does not authorize joint and several liability for property the defendant did not obtain).

The Eleventh Circuit has held that "conspiracy leaders or 'masterminds' who control criminal enterprises jointly acquire the proceeds of the conspiracy with their co-conspirators." *United States v. Elbeblawy*, 839 F. App'x 398, 400 (11th Cir. 2021) (citing *United States v. Cingari*, 952 F.3d 1301, 1305–06 (11th Cir. 2020)); *see also United States v. Knowles*, 819 F. App'x 781, 783 n.1 (11th Cir. 2020) (observing defendant, a "'leader' with decision-making authority and a high degree of participation in the drug conspiracy," directly or indirectly obtained full proceeds of the conspiracy); *United States v. Bane*, 948 F.3d 1290, 1297–98 (11th Cir. 2020) (finding defendant, the "mastermind behind the fraud," failed to prove he was not responsible for entire proceeds of the fraud); *accord United States v. Young*, 108 F.4th 1307, 1325-28 (11th Cir. 2024). Further, defendants that jointly acquire the proceeds of the crime of which they are convicted should be ordered to forfeit the total amount of the proceeds they jointly acquired. *See United States v. Goldstein*, 989 F.3d 1178, 1202–03 (11th Cir. 2021) (finding that the district court did not err in imposing a $1,953,974 forfeiture money judgment against both convicted defendants because the fraud proceeds were deposited into accounts that both defendants controlled) (citing *Cingari*, 952 at 1306).

### C. Substitute Property

If directly forfeitable property is not available, the Court may order the forfeiture of substitute assets to satisfy a money judgment. *See* 21 U.S.C. § 853(p); Fed. R. Crim. P. 32.2(e); *United States v. Fleet*, 498 F.3d 1225, 1227–31 (11th Cir. 2007) (any property of the defendant

may be forfeited as a substitute asset);  *Knowles*, 819 F. App'x at 783 ("We've held that the word

'any' in § 853(p) is a broad word that 'does not mean some or all but a few, but instead means all

. . . .'") (citing *Fleet*, 498 F.3d at 1229).  Substitute assets are available for forfeiture upon a

showing that, due to any act or omission of a defendant, directly forfeitable property:

(A) cannot be located upon the exercise of due diligence;
(B) has been transferred or sold to, or deposited with, a third party;
(C) has been placed beyond the jurisdiction of the court;
(D) has been substantially diminished in value; or
(E) has been commingled with other property which cannot be divided without difficulty.

*See* 21 U.S.C. § 853(p). The government may establish such unavailability through an agent's

declaration. *See United States v. Seher*, 562 F.3d 1344, 1373 (11th Cir. 2009). The government

also may establish such unavailability through a PSI. *See United States v. Ravenell*, 2022 WL

20690606, at *3 (D. Md. June 23, 2022) (relying on PSI and other record evidence).

### D.  Difference Between Forfeiture and Restitution

Both forfeiture and restitution are mandatory in criminal cases. *See United States v.*

*Brummer*, 598 F.3d 1248, 1250–51 (11th Cir. 2010) (the word "shall" does not convey discretion

and the district court was required to order forfeiture of the property in accordance with Fed. R.

Crim. P. 32.2); 18 U.S.C. § 3664(f)(1)(A) (requiring district courts to order restitution in the full

amount of each victim's losses). Although sometimes conflated, forfeiture and restitution serve

different purposes. "While restitution seeks to make victims whole by reimbursing them for their

losses, forfeiture is meant to punish the defendant by transferring his ill-gotten gains to the United

States Department of Justice." *United States v. Joseph*, 743 F.3d 1350, 1354 (11th Cir. 2014)

(citing *United States v. Browne*, 505 F.3d 1229, 1281 (11th Cir. 2007), *United States v. Venturella*,

585 F.3d 1013, 1019–20 (7th Cir. 2009), and *Libretti v. United States*, 516 U.S. 29, 39 (1995)).

Because of this distinction, the Eleventh Circuit has repeatedly held that district courts cannot use

restitution to offset the forfeiture amount ordered, or vice versa. *See United States v. Hernandez*, 803 F.3d 1341, 1342–44 (11th Cir. 2015); *Joseph*, 743 F.3d at 1354 ("In light of the statutory framework governing restitution and forfeiture, we hold that a district court generally has no authority to offset a defendant's restitution obligation by the value of forfeited property held by the government, which is consistent with the approach taken by the Fourth, Seventh, Eighth, Ninth, and Tenth Circuits."); *United States v. Bane*, 720 F.3d 818, 827 n.8 (11th Cir. 2013); *United States v. Hoffman-Vaile*, 568 F.3d at 1344–45; *Browne*, 505 F.3d at 1281 (finding defendant's disgorgement of illicit profits did not divest the United States of its forfeiture interest in the full amount of offense).

### E.  Property Subject to Forfeiture in Instant Criminal Case

As set forth in the Defendant's Factual Proffer, beginning in or around 2022, the Defendant, Co-Conspirator 1, and Co-Defendant Ryan Clifford Goldberg ("Co-Defendant"), began using ransomware to conduct ransomware attacks against victims. *See* Factual Proffer 2. During the times relevant to this conspiracy, the Defendant was a ransomware negotiator at Company 1 and resided in Texas. *See id*. Co-Conspirator 1 was a ransomware negotiator at Company 1 (an incident response company) and resided in Florida. *See id*. The Co-Defendant was a director of incident response for a multinational cyber cybersecurity company and resided in Georgia. *See id*. In or around May of 2023, Co-Conspirator 1 obtained affiliate access to the BlackCat panel which was shared with the Defendant and Co-Defendant. *See id*. After Co-Conspirator 1 obtained affiliate access, the Defendant, Co-Conspirator 1, and Co-Defendant agreed to and did use the BlackCat ransomware and platform to attack and extort victims and share the ransom proceeds amongst themselves and with the BlackCat admin. *See id*. at 2–3.

The three subjects communicated about using, and did leverage, their professional skillsets and familiarity with ransomware threat actors in attacking victims. *See* Factual Proffer 3. Namely, the Co-Defendant, who had professional experience of scanning and identifying vulnerabilities, procured access to victim networks. *See id*. The Co-Defendant also ran anti-forensic tools in victim networks to conceal the actors' malicious presence. *See id*. The Defendant identified victims, exfiltrated data, and locked victim networks. *See id*. Co-Conspirator 1 worked as a ransomware negotiator and previously worked in cryptocurrency tracing. *See id*. Consequently, Co-Conspirator 1 handled negotiation with Victim 1 and facilitated laundering the ransom proceeds for the three. *See id*. Through encrypted messaging services, the men communicated with and advised one another on how to troubleshoot issues that arose during their attacks. *See* Factual Proffer 3.

In or around May 2023, the Defendant, Co-Conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 1, a medical device company engaged in interstate commerce. *See id*. Victim 1's servers were encrypted and the defendant, Co-Conspirator 1, Co-Defendant in demanded a $10 million dollar ransom payment to decrypt their servers. *See id*. The attack caused Victim 1 to fear financial loss from the theft and encryption of their data. *See id*. Victim 1 paid the Defendant, Co-Conspirator 1 and Co-Defendant a ransom payment of approximately 44.811 bitcoin worth approximately $1,200,000 at the time of payment, for the decryptor and for their data not to be published on the Internet. *See id*. Consistent with the agreement with the BlackCat administrator to receive affiliate access to the BlackCat panel, the Defendant, Co-Conspirator 1, and Co-Defendant paid the BlackCat administrator a percentage of the ransom. *See id.* at 3–4.

[Space Intentionally Left Blank]

Per the agreement with BlackCat's administrator, Victim 1's ransom payment of approximately 44.811 bitcoin was split; the BlackCat administrator received approximately twenty percent (20%) of the ransom payment, and the co-conspirators received approximately eighty percent (80%) of the ransom payment. *See* Factual Proffer 4. Thus, the co-conspirators received approximately 36.729 bitcoin from Victim 1's ransom payment, which they all agreed to split equally amongst themselves. *See id*. This amounted to each co-conspirator receiving approximately 12.243 bitcoin, which at the time was valued at approximately $324,123.26. *See id*. The Defendant and Co-Defendant chose to launder their share of Victim 1's ransom payment using a cryptocurrency mixing service provided by ALPHV BlackCat before transferring their share to cryptocurrency wallets they controlled. *See id*.

In or around May 2023, the Defendant, Co-conspirator 1, and Co-Defendant used BlackCat ransomware to attack Victim 2, a pharmaceutical company engaged in interstate commerce. *See id*. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a ransom payment to decrypt their servers with the intent to cause Victim 2 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 2 did not pay ransom and thus was not provided a decryptor which resulted in Victim 2 sustaining damages. *See* Factual Proffer 4.

In or around June 2023, the Defendant. Co-Conspirator 1, and Co-Defendant used BlackCat to attack Victim 3, a doctor's office engaged in interstate commerce. *See id*. at 5. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $5,000,000 ransom payment to decrypt Victim 3's servers. *See id*. The Defendant, Co-Conspirator 1, and the Co-Defendant intended to cause Victim 3 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 3 did not pay the ransom and thus did not provide a decryptor. *See id*.

Victim 3 suffered damages, including having sensitive patient photos published on the leak site. *See id*.

In or around October 2023, the Defendant, Co-conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 4, an engineering company engaged in interstate commerce. *See* Factual Proffer 5. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $1,000,000 ransom payment to decrypt their servers. *See id*. The Defendant, Co-Conspirator 1, and the Co-Defendant intended to cause Victim 4 to fear financial loss from the theft and encryption of their data and therefore pay the ransom. *See id*. Victim 4 did not pay ransom and thus was not provided a decryptor which resulted in Victim 4 sustaining damages. *See id*.

In or around November 2023, the Defendant, Co-conspirator 1, and the Co-Defendant used BlackCat ransomware to attack Victim 5, a manufacturer of unmanned aerial systems engaged in interstate commerce. *See id*. The Defendant, Co-conspirator 1, and the Co-Defendant demanded a $300,000 ransom payment to decrypt their servers. *See id*. at 5–6. The Defendant, Co- Conspirator 1, and the Co-Defendant intended to cause Victim 5 to fear financial loss from the theft and encryption of their data and therefore, to pay the ransom. *See* Factual Proffer 6. Victim 5 did not pay ransom and thus was not provided with a decryptor which resulted in Victim 5 sustaining damages. *See id*. at 6.

Based on the record in this case, the total value of the proceeds traceable to Count 1 is $324,123.26, which sum may be sought as a forfeiture money judgment pursuant to Rule 32.2 of the Federal Rules of Criminal Procedure.

[Space Intentionally Left Blank]

Accordingly, pursuant to 18 U.S.C. § 981(a)(1)(C), and the procedures set forth in 21 U.S.C. § 853 and Fed. R. Crim. P. 32.2, the Court should issue the attached proposed order, which provides for the entry of a forfeiture money judgment against the Defendant; the inclusion of the forfeiture as part of the Defendant's sentence and judgment in this case; and permission to conduct discovery to locate assets ordered forfeited.

### LOCAL RULE 88.9 CERTIFICATION

Pursuant to Local Rule 88.9, I hereby certify that the United States has conferred with defense counsel via e-mail and there is no opposition/objection to the relief sought.

Respectfully submitted,

**JASON A. REDING QUIÑONES**
**UNITED STATES ATTORNEY**

By:   *s/ Mitchell E. Hyman*
Mitchell Evan Hyman
Assistant United States Attorney
Florida Bar No. 125405
United States Attorney's Office
99 N.E. 4th Street, 7th Floor
Miami, Florida 33132-2111
Telephone: (305) 961-9283
E-mail: Mitchell.Hyman@usdoj.gov

11